**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAREN PETERS, INDIVIDUALLY and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MOONLAKE IMMUNOTHERAPEUTICS, JORGE SANTOS DA SILVA, and MATTHIAS BODENSTEDT,<br><br>　　　　　　　　　Defendants. | Case No. 1:25-cv-8612<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Jury Trial Demanded |

Plaintiff Karen Peters ("Plaintiff"), by and through her attorneys, alleges upon personal knowledge as to herself, and upon information and belief as to all other matters, based upon the investigation conducted by and through her attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant MoonLake Immunotherapeutics ("MoonLake" or the "Company") common stock between March 10, 2024 through September 29, 2025, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. MoonLake is a Swiss clinical-stage biotechnology company focused on inflammatory diseases driven by interleukin-17 (IL-17), particularly in dermatology and rheumatology. Its sole drug candidate, sonelokimab (SLK), is developed primarily for hidradenitis suppurativa (HS)—a chronic, painful skin disorder characterized by recurrent nodules and abscesses—as well as for psoriatic arthritis, psoriasis, and axial spondyloarthritis.

3. MoonLake began its Phase 2b MIRA trial of Sonelokimab (SLK) for moderate-to-severe hidradenitis suppurativa in May 2022 and reported positive top-line results in June 2023, meeting its primary HiSCR75 endpoint. Follow-up data in October 2023 showed further improvement with continued treatment, and in early 2024, both the FDA and EMA endorsed MoonLake's proposed Phase 3 program. The Phase 3 VELA-1 and VELA-2 trials began patient screening in May 2024.

4. SLK is a patented structure known as a Nanobody. Nanobodies are small, engineered antibody fragments that differ from traditional monoclonal antibodies in their structure and size. By contrast, Union Chimique Belge's (UCB) bimekizumab-bkzx, ("BIMZELX")—the FDA-approved drug for HS against which SLK would need to demonstrate superior efficacy—is a full-length monoclonal antibody that circulates broadly throughout the body to block the same inflammatory cytokines.

5. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material facts, regarding the distinction between the Nanobodies and monoclonal antibodies, including that: (1) that SLK and BIMZELX share the same molecular targets (the inflammatory cytokines IL-17A and IL-17F); (2) that SLK's distinct Nanobody structure would not confer a superior clinical benefit over the traditional monoclonal structure of BIMZELX; (3) SLK's distinct Nanobody structure supposed increased tissue penetration would

2

not translate to clinical efficacy; and (4) based on the foregoing, Defendants lacked a reasonable basis for their positive statements regarding SLK's purported superiority to monoclonal antibodies.

6. On September 28, 2025, MoonLake announced week-16 results from its Phase 3 VELA program. The results showed that SLK failed to demonstrate competitive efficacy relative to BIMZELX. Following the announcement, MoonLake's stock price cratered, declining $55.75 per share, or 89.9%, to close at $6.24 on September 29, 2025.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

10. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

12. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce

including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff Karen Peters acquired and held shares of the Company at artificially inflated prices during the class period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

14. Defendant MoonLake is incorporated in the Cayman Islands with its principal place of business in Zug, Switzerland. The Company trades on the NASDAQ stock exchange under the ticker symbol "MLTX" and claims that it is "a clinical stage biotechnology company advancing therapies to address significant unmet needs in inflammatory skin and joint diseases."

15. Defendant Jorge Santos da Silva, Ph.D. ("da Silva") has served as the Chief Executive Officer of MoonLake since 2021.

16. Defendant Matthias Bodenstedt ("Bodenstedt") has served as MoonLake's Chief Financial Officer since 2021.

17. Collectively, da Silva and Bodenstedt are referred to throughout this complaint as the "Individual Defendants".

18. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their position with the Company and access to material non-public information available to them but not to the public, the Individual

Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

19. MoonLake is a clinical-stage biotechnology company focused on developing therapies for inflammatory diseases driven by interleukin-17 ("IL-17"), particularly in dermatology and rheumatology. Its sole drug candidate, SLK, was developed primarily for the treatment of hidradenitis suppurativa ("HS"), as well as psoriatic arthritis, psoriasis, and axial spondyloarthritis.

20. Central to SLK's commercial prospects was its ability to demonstrate efficacy in HS comparable or superior to BIMZELX, an FDA-approved monoclonal antibody for the same indication. While SLK's Nanobody® structure differed from BIMZELX's monoclonal antibody format by being significantly smaller, both drugs targeted the same inflammatory cytokines, IL-17A and IL-17F.

21. Throughout the Class Period, Defendants repeatedly promoted SLK's purported structural advantages as translating into superior clinical efficacy. Defendants claimed that SLK could achieve benefits "a monoclonal antibody cannot do," that "the molecular advantages of our Nanobody translate into higher clinical responses for patients," and that Nanobodies "offer a more convenient and effective treatment." However, the Phase 3 results proved otherwise. On September 28, 2025, the Company announced that only one of the two Phase 3 trials achieved statistical significance—and even those results demonstrated substantially lower efficacy than BIMZELX.

5

## DEFENDANTS' MATERIALLY FALSE AND
## MISLEADING STATEMENTS AND OMISSIONS

22. The Class Period begins on March 10, 2024. On that day, MoonLake hosted an R&D Day for its investors. Defendants touted the benefits and superiority of their patented Nanobody technology relative to traditional monoclonal antibodies. During this event, Defendant Da Silva stated:

> In the case of sonelokimab, which is depicted here to the right, we have two domains and with these two epitopes, we combine two different targets in IL-17A and IL-17F, and we even have a third domain that allows us to buy albumin, not only to stabilise the molecule in terms of halflife, but as a targeting mechanism to sites of inflammation, which are rich in albumin. And obviously, ***binding two different molecules in different epitopes, being targeted by a third domain is all things that a monoclonal antibody cannot do***. Even when we do all of these things, ***the molecule is 40 kD, so it is much smaller than a monoclonal antibody, and that allows us to penetrate tissues better***. The molecule is very convenient, is administered through subcutaneous administration. The maintenance dose is a monthly dose. It is one ml and an injection that takes three seconds, so obviously, from a patient perspective, very exciting. That is the technology which we think is very differentiating of our molecule versus, any other molecule in these pathways . . . ***What is different in our molecule, as I said, is that we are a Nanobody, so we have all those characteristics that a molecule bimekizumab does not have***. And when it comes to the affinity to bind these three dimers, the profile is very different. ***We can bind all three dimers with very similar, very high affinity. That is very different from what bimekizumab can do***."

23. These statements, including stating that "[SLK] is much smaller than a monoclonal antibody, and that allows us to penetrate tissues better" and stating that "[w]e can bind all three dimers with very similar, very high affinity. That is very different from what bimekizumab can do" were materially false and misleading when made, as they failed to disclose that SLK and BIMZELX share the same molecular targets (the inflammatory cytokines IL-17A and IL-17F), and that SLK's distinct Nanobody structure would not confer a superior clinical benefit over the traditional monoclonal structure of BIMZELX.

24. On November 7, 2024, MoonLake published a press release announcing the Company's third quarter of fiscal year 2024 results. The press release quoted Defendant da Silva

6

in part, who stated that "[t]he strong clinical data that we continue to build on *suggests that the ability to inhibit all IL-17A and IL-17F containing dimers, together with the molecular advantages of our Nanobody®, translate into higher clinical responses for patients, and provide ample opportunity for differentiation of sonelokimab versus all competitors*. We look forward to 2025 with multiple data catalysts, including the expected primary readout of our Phase 3 VELA program in HS as of mid-year."

25. This statement, including that the "the molecular advantages of our Nanobody®, translate into higher clinical responses for patients[] and provide ample opportunity for differentiation of sonelokimab versus all competitors," was materially false and misleading when made, as it failed to disclose that SLK's distinct Nanobody structure would not confer a superior clinical benefit over the traditional monoclonal structure of BIMZELX, SLK's main competitor.

26. On March 28, 2025, Defendant da Silva participated in an interview with Investment Reports. In the interview, he stated that MoonLake's focus on Nanobodies was because they "have the potential to *overcome the limitations of monoclonal antibodies*. They are smaller, more stable, easier to manufacture, and *can target multiple sites of inflammation simultaneously, offering a leap forward in treating autoimmune diseases*. This approach excites us because *nanobodies can penetrate tissues more effectively, allowing for better targeting of diseases deep within body tissues*. With nanobodies, we can offer *a more convenient and effective treatment for patients while addressing significant unmet medical needs*."

27. These statements, including that Nanobodies "can target multiple sites of inflammation simultaneously, offering a leap forward in treating autoimmune diseases," "penetrate tissues more effectively, allowing for better targeting of diseases deep within body tissues," and "offer a more convenient and effective treatment for patients while addressing significant unmet

7

medical needs" were materially false and misleading when made, as they failed to disclose that that SLK, MoonLake's only Nanobody drug, and BIMZELX share the same molecular targets (the inflammatory cytokines IL-17A and IL-17F), and that SLK's distinct Nanobody structure would not confer a superior clinical benefit over the traditional monoclonal structure of BIMZELX.

28. On April 29, 2025, MoonLake hosted a Capital Markets Update for its investors. During the presentation, Defendant da Silva stated: "what is a nanobody? It is what we believe to be a next-generation biologic . . . *which is excellent for penetration*, and we've shown many pieces of data for that. As I said, *we can have different devices that monoclonal antibodies don't have* . . ."

29. This statement, including that Nanobodies were "excellent for penetration," and "have different devices that monoclonal antibodies don't have" were materially false and misleading when made, as they failed to disclose that any demonstrated clinical advantage over the traditional monoclonal antibody structure used in BIMZELX, and that both drugs shared identical molecular targets (IL-17A and IL-17F).

30. On July 8, 2025, Guggenheim hosted their Biopharma Spotlight Series. Yatin Suneja shared some "key highlights" from Guggenheim's discussion with MoonLake the next day, including "*[a] reminder that sonelokimab* (nanobody targeting dual IL-17A & IL-17F) *is not simply a 'me-too' analog of UCB's BIMZELX* (IL-17A/F mAb), and that *sonelokimab provides distinct drug hallmarks that not only enhances efficacy & convenience, but has strong potential of scalability across numerous I&I indications* . . . ."

31. These statements, including that "sonelokimab . . . is not simply a 'me-too' analog of UCB's BIMZELX" and "sonelokimab provides distinct drug hallmarks that . . . enhances efficacy & convenience" were materially false and misleading when made, as they failed to disclose that

8

SLK and BIMZELX shared identical molecular targets (IL-17A and IL-17F), and that SLK's distinct Nanobody structure did not enhance its efficacy.

32. The truth was revealed on September 28, 2025, where in a press release and webcast, MoonLake announced the long-awaited week-16 results from its Phase 3 VELA program evaluating SLK in moderate-to-severe hidradenitis suppurativa. In VELA-1, SLK beat the placebo in HS disease response by 17 percentage points, a statistically significant difference. In VELA-2, a high placebo response precluded endpoint results with statistical significance. While VELA-1 may have appeared to be a success, to be considered competitive with BIMZELX as an effective treatment for HS, SLK had to beat placebo by at least 23 percentage points.

33. The market responded accordingly. Analyst Brian Abrahams of RBC Capital Markets described the results as "a near worst-case scenario" and Andy Chen of Wolfe Research proclaimed the outcome a "disastrous result."

34. MoonLake's stock price cratered in the aftermath of the announcement of the VELA results. The Company's stock price fell $55.75 per share, or 89.93%, to close at $6.24 per share on September 29, 2025.

**ADDITIONAL SCIENTER ALLEGATIONS**

35. As alleged herein, Defendants acted with scienter in that they knew the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and in actions intended to manipulate the market price of MoonLake common stock as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true

facts regarding MoonLake, their control over, and/or receipt or modification of, the Company's allegedly materially misleading misstatements, and/or their associations with the Company that made them privy to confidential proprietary information concerning MoonLake, participated in the fraudulent scheme alleged herein.

36. As such, the Individual Defendants knew or were reckless in not knowing of the undisclosed facts detailed herein.

## LOSS CAUSATION

37. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

38. On September 28, 2025, MoonLake announced week-16 results from its Phase 3 VELA program evaluating SLK in patients with moderate-to-severe HS. The results showed that SLK failed to demonstrate competitive efficacy relative to BIMZELX. Following the announcement, MoonLake's stock price declined $55.75 per share, or 89.9%, to close at $6.24 on September 29, 2025.

39. The decline in MoonLake's stock price is directly attributable to the Company's announcement regarding the 16-week results of the Phase 3 VELA program.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

40. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b. The omissions and misrepresentations were material;

    c. The Company's common stock traded in efficient markets;

      d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

      e.   Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

41.    At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

42.    The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

43.    To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## CLASS ACTION ALLEGATIONS:

44.    Plaintiff brings this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise

acquired MLTX common stock between March 10, 2024 through September 29, 2015, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

45. The members of the Class are so numerous that joinder of all members is impracticable. Investors purchased millions of shares of MoonLake during the class period. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

46. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether the Exchange Act was violated by Defendants;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e. Whether the price of the Company's stock was artificially inflated; and

    f. The extent of damage sustained by Class members and the appropriate measure of damages.

47. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

48. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

### Count I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

50. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

53. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

13

## Count II
## Violation of § 20(a) of the Exchange Act
## (Against The Individual Defendants)

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

DATED: October 17, 2025                  Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com

*Counsel for Plaintiff*

**Certification Pursuant to Federal Securities Laws**

1. I, Karen Peters, make this declaration pursuant to Section 27(a)(2) of the Securities act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against MoonLake Immunotherapeutics ("MoonLake" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not transact in MoonLake Immunotherapeutics securities at the direction of plaintiff's counsel, or in order to participate in any private action under the federal securities laws.

4. I am willing to serve as a representative party on behalf of a class of investors who purchased or otherwise acquired: MoonLake Immunotherapeutics securities during the Class Period, as specified in the Complaint; including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. Attached hereto as Schedule A is a list of all of my transactions in MoonLake Immunotherapeutics securities during the Class Period, as specified in the Complaint.

6. During the past three years, I have not sought to serve as a representative party on behalf of a class under federal securities laws.

7. I will not accept payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court in accordance with 15 U.S.C. 78u-4(a)(4).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 10/17/2025

*Karen Peters*
Karen Peters

**Schedule A**

Karen Peters' Transactions in MoonLake Immunotherapeutics (MLTX):

Common Stock

| Transaction Type | Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchase | 9/29/2025 | 100.00 | $30.00 | ($3,000.00) |

MLTX 10/17/2025 $30.00 PUT

| Transaction Type | Date | Contracts | Price Per Contract | Cost/Proceeds |
|---|---|---|---|---|
| Sale | 8/25/2025 | -1.00 | $3.4034 | $340.34 |
| Assignment | 9/29/2025 | 1.00 | N/A | N/A |