Dylan A. Berger, Esq.
**ABRAHAM, FRUCHTER**
   **& TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY 10123
(212) 279-5050

*Counsel for City of Detroit General*
*Retirement System and Proposed Lead Counsel*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREN PETERS, Individually and on Behalf of All Others Similarly Situated,<br><br>                                     Plaintiff,<br><br>      v.<br><br>MOONLAKE IMMUNOTHERAPEUTICS, JORGE SANTOS DA SILVA, and MATTHIAS BODENSTEDT,<br><br>                                  Defendants. | Case No. 1:25-cv-08612-LAK<br><br>CLASS ACTION |

## CITY OF DETROIT GENERAL RETIREMENT SYSTEM'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

The City of Detroit General Retirement System ("Detroit Retirement" or the "System"), through its undersigned counsel, respectfully submits this memorandum in opposition to the competing motion for appointment as lead plaintiff in this Action and in further support for its motion for appointment as lead plaintiff and approval of its selection of Lead Counsel.[1]

## INTRODUCTION

Of the seven motions filed by putative class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), only two remain pending.[2] *See* ECF Nos. 13-33. Pursuant to the PSLRA, this Court is to appoint the movant who is most capable of adequately representing the interests of the putative Class. 15 U.S.C. §78u-4(a)(3)(B)(i). Here, that movant is Detroit Retirement.

Detroit Retirement meets all the PSLRA requirements for appointment as lead plaintiff and, as an institutional investor, is exactly the type of investor that Congress sought to have appointed as lead plaintiff in class actions when it enacted the PSLRA. There are no questions, and can be no doubts, about Detroit Retirement's investing and litigation experience and ability to represent the interests of the putative Class.

The only competing lead plaintiff movant is an individual, Yoann Kimfoko ("Kimfoko"). While Kimfoko claims a slightly larger loss of $383,405.25 compared to Detroit Retirement's loss of $362,642.57, that difference is insignificant considering the benefits Detroit Retirement can

---

[1] Unless stated otherwise, capitalized terms have the same meaning as defined in the System's lead plaintiff opening memorandum (ECF No. 25) or in the Complaint (ECF No. 1).

[2] All other filers have either withdrawn their motions or filed a Non-Opposition to the competing motions for appointment as lead plaintiff and approval of Lead Counsel. *See* ECF Nos. 34-40.

1

provide in leading the Class and the intent of Congress to have sophisticated institutional investors play an active leading role in class action securities fraud litigation.

Here, Detroit Retirement is the movant who can most capably represent the interests of the putative Class, and it should therefore be appointed as lead plaintiff and have its selection of Lead Counsel approved. In the alternative, Detroit Retirement respectfully requests the Court issue an Order allowing it to conduct discovery into the adequacy of Kimfoko to act as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv).

## ARGUMENT

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). Here, it is Detroit Retirement which best fits that description.

### A. Detroit Retirement, as an Institutional Investor, Is the Type of Investor Congress Envisioned as Serving as Lead Plaintiff When It Enacted the PSLRA

This Court has recognized "the Congressional preference for institutional lead plaintiffs in private securities class actions[,]" stating:

> This preference is clear from the PSLRA's legislative history[] and has been recognized by numerous courts.[] Indeed, the preference for institutional lead plaintiffs was part of the reason Congress added to the PSLRA the provision granting a presumption in favor of the plaintiff with the largest financial interest in the litigation.[] In these circumstances, and bearing in mind the failure of either [individual investors] to show any particular and relevant investment and litigation expertise, the clear choice for lead plaintiff is OPPRS, the only movant that is an institutional investor.

*Randall v. Fifth St. Fin. Corp.*, No. 15-CV-7759([LAK]), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016). The same holds true in this Action.

2

Detroit Retirement—a sophisticated institutional investor—is the exact type of investor that Congress sought to have appointed as lead plaintiff in class actions when it enacted the PSLRA. *See In re Cendant Corp. Litig.*, 264 F.3d at 273 ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members."); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs") (citing cases).

When there are competing lead plaintiff motions between an institutional investor and individuals, the institution is the one that best adheres to the intent of Congress and should be appointed as lead plaintiff. *See Randall*, 2016 WL 462479, at *3.[3] Indeed, even in situations where the individuals have a greater loss than the institution from investing in the stock at issue in the case, courts, including this Court, have appointed the institution as lead plaintiff instead of the individual. *See Id.* at *2-3 (individuals, together or separate, arguably had greater losses than the institution but court appointed the institution as lead plaintiff).

In *Randall*, this Court stated that although the PSLRA provides a presumption that the movant with the largest financial interest in the relief sought by the class should be appointed as lead plaintiff, "as the difference among competing plaintiffs' alleged losses shrinks, so too does

---

[3] *See also In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (institution with extensive litigation experience "is precisely the type of plaintiff envisioned under the PSLRA"); *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("Under the PSLRA, institutional investors are considered preferred lead plaintiffs."); *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *4 (D. Colo. 2024) ("Lead Plaintiff is an institutional investor of the type favored by Congress when passing the PSLRA[.]"); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 1387110, at *4 (D. Colo. Apr. 13, 2021) (same).

the persuasiveness of the presumption." *Randall*, 2016 WL 462479, at *3. Moreover, this Court also recognized that "courts have declined to afford this presumption to movants—particularly individual investors—when the difference between their alleged losses and those of competing movants—particularly institutional investors—was 'minimal.'" *Id.* (citations omitted); *see also Freedman v. Weatherford Int'l Ltd.*, No. 12 CIV. 2121 (LAK), 2012 WL 13175995, at *1 (S.D.N.Y. July 10, 2012) (this Court found that where institutions had losses that were 70% of the competing individual lead plaintiff's losses, that difference was not material). Numerous other courts have similarly ruled. *See Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06 CIV. 5797 PAC, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (court treated $40,000 difference in losses between competing lead plaintiff movants as being "roughly equal"); *Juliar v. Sunopta Inc.*, No. 08 Civ. 933 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (appointing a group of two institutions as lead plaintiff rather than a group of three individuals where the individuals arguably had a larger $30,000 loss than one of the two institutions (if the other institution's losses were disregarded, as the individuals contended), finding the difference was "minimal" and "[did] not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs.").[4] Here, the $21,000 difference in claimed losses by Detroit Retirement and Kimfoko is minimal and similarly should not prevent the appointment of Detroit Retirement as lead plaintiff.

---

[4] *See also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("This [clear] preference [for institutional investors] has been determinative in other cases, even when an institutional investor has a slightly lower loss than another potential lead plaintiff.") (citing *Juliar v. SunOpta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009)); *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *2, 4-5 (S.D.N.Y. July 2, 2018) (court appointed an institutional investor as lead plaintiff rather than two brothers filing together, even though the institution's loss was nearly $130,000 smaller than the brothers' loss); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. at 338 (court appointed lead plaintiff movant with the third largest loss, finding it to be the type of lead plaintiff envisioned by the PSLRA).

In addition to Detroit Retirement being an institution and the differences in losses between the movants being minimal, Detroit Retirement, as an institution that has been involved in prior securities litigations, is a sophisticated investor, which is experienced in directing counsel in complex litigation, and has the resources and capability of providing whatever is needed to prosecute this Action to a successful conclusion, no matter how long it takes.

By contrast, Kimfoko is a virtual unknown. Searches could find only limited information about him. *See* Declaration of Dylan A. Berger in Support of City of Detroit General Retirement System's Opposition to Competing Motion for Appointment as Lead Plaintiff ("Berger Decl."), filed currently herewith. Based on those searches, Kimfoko purports to be a resident of Paris, France. *Id.* at ¶3. However, he apparently maintains a business with a registered address at what appears to be a single-family home in Northwestern France. *Id.* at ¶6. There was no indication from online resources that Kimfoko resides anywhere but in France. *Id.* Moreover, it is not known whether he has any experience with directing counsel in litigation, particularly where he would be serving as a representative of others, or whether he has experience with complex litigation, such as this one, that is typically lengthy and costly. *Id.* at ¶7. As a sole individual, he may not have the time or resources to provide the needed supervision and direction to lead this litigation, and, if he lives overseas, may not have the ability to appear for court proceedings or other activities that require his presence.[5]

As this Court acknowledged in *Randall*, the individual investors' failure "to show any particular and relevant investment and litigation expertise" was also a factor in appointing an institution rather than granting their motion. *Randall*, 2016 WL 462479, at *3; *see also Freedman,*

---

[5] Because of these various questions about Kimfoko's ability to serve as lead plaintiff, the System, alternatively, requests limited discovery. *See infra*.

2012 WL 13175995, at *1 (institutions were sophisticated investors whereas individual lead plaintiff movant provided no suggestion he had "comparable expertise in business and investment matters"); *Plumbers & Pipefitters Loc. 51 Pension Fund v. First Bancorp.*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (court conducted in-court interviews of two individual lead plaintiff movants and became "acutely aware" that one had very little investment expertise and virtually no experience with this type of litigation, and the other's investments may give rise to special defenses). Detroit Retirement is the most adequate lead plaintiff applicant because questions exist regarding Kimfoko's residence, his experience at directing counsel in a complex securities litigation, his resources and availability, his fluency in the English language, and an unusual trading pattern indicating it may be an automated or pre-set plan, as described below.

**B.**     **In the Alternative, Detroit Retirement Should Be Allowed Limited Discovery from Kimfoko**

The PSLRA provides that a class member may conduct discovery into the adequacy of a competing movant for lead plaintiff upon demonstrating a "reasonable basis" for a finding that the movant is incapable of adequately representing the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv). Numerous courts have ordered a proposed lead plaintiff to submit to discovery in similar circumstances. *See, e.g., Pena v. iBio, Inc.*, No. 14-1343-RGA, ECF No. 25 (D. Del. Jan. 30, 2015)[6] (court orders hearing for individual lead plaintiff movant to explain how he will manage and direct the litigation and to explain problems with certification); *Utesch v. Lannett Co., Inc., et al.*, No. 16-5932-WB, 2017 WL 11679626, at *1-2 (E.D. Pa. Feb. 16, 2017) (court ordered document discovery and depositions of presumptive lead plaintiff); *In re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (court authorized a four-hour deposition of two lead

---

[6] Exh. A to the Berger Decl.

plaintiff movants and found the discovery "illuminating" as to why they were inadequate to represent the class); *Fischler v. AmSouth Bancorporation*, No. 95-1567-Civ-T-17A, 1997 WL 118429, at *3-4 (M.D. Fla. Feb. 6, 1997) ("uncertainty" or "unanswered questions" about a putative lead plaintiff's ability to properly represent the class are sufficient to trigger the PSLRA's lead plaintiff discovery provision).

A reasonable basis exists to justify limited discovery into the adequacy of Kimfoko. Here, as noted *supra*, there are questions about Kimfoko's residence, his experience at directing counsel in a complex securities litigation, and his resources and availability. In addition, his certification shows an unusual trading pattern in which he seemed to invest a set dollar amount periodically, buying fractional shares at times, that may indicate an automated or pre-set spending plan, which may raise questions regarding typicality and/or subject him to unique defenses. At minimum, Detroit Retirement should be afforded the opportunity to conduct discovery directed at these issues.

Because Detroit Retirement has shown a reasonable basis for finding that Kimfoko's "standing, typicality, adequacy or potentially unique defenses may render" Kimfoko "incapable of adequately representing the class[,]" the Court should "allow limited discovery" of him. *Prissert v. Emcore Corp.,* 2009 WL 10668530, at *3-4 (D.N.M. Sept. 29, 2009) (quoting 15 U.S.C. §78u-4(a)(3)(B)(iv)) (court allowed discovery despite the fact that competing movants only made "general allegations" that the presumptive lead plaintiff was atypical or inadequate); *see also Broadfoot v. Barrick Gold Corp.*, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (court granted limited discovery of lead plaintiff movants where issues may "defeat typicality and adequacy[,]" because "it would be preferable to engage now in a fuller examination of" the Rule 23 requirements before entrusting a case to the stewardship of a lead plaintiff movant); *Rao v. Quorum Health*

7

*Corp.*, 221 F. Supp. 3d 987, 990 (M.D. Tenn. 2016) ("allow[ing] 45 days of limited discovery into whether [a movant] will adequately represent the class and whether it is subject to any unique defenses"); *Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at *3 (M.D. Fla. Feb. 6, 1997) ("uncertainty" or "unanswered questions" about a putative lead plaintiff's ability to properly represent the class are sufficient to trigger the PSLRA's lead plaintiff discovery provision).

If the opposing motion is not denied, Detroit Retirement should be permitted to take limited discovery regarding, *inter alia*, Kimfoko's trading pattern, residence, experience with directing counsel in complex litigation, and his resources and availability.

8

## CONCLUSION

For the reasons discussed herein and in its moving papers (ECF Nos. 24-26), Detroit Retirement respectfully requests that the Court: appoint it as Lead Plaintiff; approve its selection of Abraham, Fruchter & Twersky, LLP as Lead Counsel for the Class; and deny the competing motions, or in the alternative, allow Detroit Retirement to take limited discovery of Kimfoko.


DATED: December 29, 2025                    Respectfully Submitted,

s/ Dylan A. Berger
DYLAN A. BERGER
**ABRAHAM, FRUCHTER
    & TWERSKY, LLP**
Mitchell M.Z. Twersky
Atara Twersky
Lawrence D. Levit
Dylan A. Berger
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com
atwersky@aftlaw.com
llevit@aftlaw.com
dberger@aftlaw.com

*Counsel for City of Detroit General
Retirement System and Proposed Lead
Counsel for the Class*

9