# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KAREN PETERS, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:25-cv-08612-LAK |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| MOONLAKE IMMUNOTHERAPEUTICS, JORGE SANTOS DA SILVA, and MATTHIAS BODENSTEDT, | |
| Defendants. | |

## YOANN KIMFOKO'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS <u>SELECTION OF LEAD COUNSEL</u>

Yoann Kimfoko respectfully submits this reply in further support of his motion to be appointed Lead Plaintiff and for approval of his selection of Lead Counsel. *See* ECF No. 31.[1]

## PRELIMINARY STATEMENT

There is no dispute that Mr. Kimfoko asserts the largest financial interest in this litigation with a loss of $383,405. The only movant to oppose Mr. Kimfoko, the City of Detroit General Retirement System (the "System"), admits that it suffered a smaller loss. ECF No. 41 at 2. When there is no dispute about the largest loss, courts routinely appoint individual investors as Lead Plaintiff over institutional ones, even where the difference in losses is far smaller than here. *See Francisco v. Abengoa, S.A.*, 2016 WL 3004664, at *5 (S.D.N.Y. May 24, 2016) (institution would not be presumptive Lead Plaintiff "even if the difference in losses were considered *de minimis*" because it conceded individuals had greater financial interest); *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *2, *6 (D. Ariz. Mar. 11, 2009) ("a few hundred dollar[]" difference in losses determinative to appoint individual investor as Lead Plaintiff over institutional one).

Nevertheless, the System asks the Court to disregard the "straightforward application" of the presumption under the PSLRA that the Court should appoint the movant with the largest loss **solely** on the basis that it is an institution and that Mr. Kimfoko is an individual. But the System stretches the argument too far. While it is true that in certain circumstances courts have appointed institutions with smaller losses than an individual movant, this is not such a case. Those cases generally find some infirmity in the individual movant or the proposed lead counsel, or the largest loss was in dispute. Here, Mr. Kimfoko makes a strong *prima facie* showing of his typicality and adequacy, which is all that is required at this stage of the litigation. 15 U.S.C. § 78u-

---

[1] Unless otherwise indicated, all capitalized terms are defined in Mr. Kimfoko's initial and opposition briefs (*see* ECF Nos. 32, 42), all references to "ECF No." are to the docket in this case, and all internal citations and quotations are omitted.

4(a)(3)(B)(iii)(I).    He submitted a sworn declaration with his opening papers detailing his background, investment experience, and commitment to fulfill his obligations as Lead Plaintiff. *See* ECF No. 33-1 ¶¶2–8.    He also carefully discharged his fiduciary duties by selecting a preeminent law firm as proposed Lead Counsel, which has recovered over $2 billion in securities related matters since 2014, including a $120 million recovery before this Court in *Freedman v. Weatherford International Ltd*., No. 1:12-cv-02121-LAK (S.D.N.Y.).    *See* ECF Nos. 33-6, 42 at 9-10.

The System tries to stir adequacy challenges, however, that are textbook speculation and fall far short of the "proof" required to rebut the presumption.    15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The System's counsel's "google searches" supposedly finding facts (ECF No. 43 at 2-3) do nothing more than confirm the facts set forth in Mr. Kimfoko's Declaration submitted with his opening papers.    *See* ECF No. 33-1 ¶¶2-8.    Courts routinely reject such arguments where, as here, they offer nothing more than speculation and are contradicted by the record.    Nor do they justify discovery when they fail to raise a single issue of fact.    There is no dispute that Mr. Kimfoko is an individual and the System is an institution.    The PSLRA permits discovery only upon a "reasonable basis," 15 U.S.C. §78u-4(a)(3)(B)(iv), but absent any factual issue the System's request is a cliché lead plaintiff opposition argument.

## ARGUMENT

**A.    Mr. Kimfoko Is The Presumptive Lead Plaintiff With The Undisputed Largest Loss**

It is undisputed that Mr. Kimfoko suffered the largest loss and thus has the largest financial interest in this litigation.    Every movant, including the System, reported their financial interests to the Court in terms of the losses they incurred because it is considered by far the most indicative metric.    *See* ECF No. 42 at 6; *Guzman v. Ford Motor Co.*, 2025 WL 2694126, at *7 (E.D. Mich.

Sep. 22, 2025) ("focus[ing] on approximate losses suffered" to determine the largest financial interest since (i) "most courts agree that it is the most salient factor," and (ii) "it was the approach all of the movants used in their opening briefs"); *see also In re CMED Sec. Litig.*, 2012 WL 1118302, at *3 (S.D.N.Y. Apr. 2, 2012) (explaining that "courts in this District, as others, 'place the most emphasis on . . . the approximate losses suffered by the movant'").

Courts routinely find that *any* difference in loss is determinative of financial interest, particularly where, as here, Mr. Kimfoko's loss exceeds the System's by more than *$20,000*. *See Hall*, 2009 WL 648626, at *2, *6 ("a few hundred dollar[]" difference in losses determinative); *Robison v. Digital Turbine, Inc.*, 2022 WL 17881476, at *7 (W.D. Tex. Dec. 19, 2022) (approximately $6,000 greater loss determinative); *see also Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (approximately $8,000 greater loss determinative and holding that "any financial difference [in loss] is meaningful in determining a lead plaintiff" even if "the difference in losses is *de minimis*.").

Moreover, Mr. Kimfoko's financial interest is not only greater because he suffered a larger loss, but also because under the commonly applied *Lax* factors, as set forth in the table below, Mr. Kimfoko prevails on three of the four factors. *See Pahlkotter v. SelectQuote, Inc.*, 2025 WL 3062751, at *2 (S.D.N.Y. Nov. 3, 2025) (listing below factors); *see also Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Mr. Kimfoko expended $440,352 in net funds to purchase MoonLake stock, *over $77,000 more* than the System, and holds *more than 8,000* additional net shares.

3

| Movant | Total Shares Purchased | Net Shares Purchased | Net Expenditures | Claimed Loss[2] |
|---|---|---|---|---|
| **Yoann Kimfoko** | **8,218** | **8,055** | **$440,352** | **$383,405** |
| The System | 9,300 | 0 | $362,643 | $362,643 |

The System prevails only on shares purchased, a factor courts deem the least significant. *See Pahlkotter*, 2025 WL 3062751, at *2 ("[c]ourts tend to treat the factors in ascending order of importance, with the size of the loss being the most important"). Thus, there can be no dispute that Mr. Kimfoko asserts the "largest financial interest in the relief sought by the class" and is the presumptive Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Recognizing as much, the System argues that the difference in losses is "minimal" and that its institutional status entitles it to Lead Plaintiff appointment. ECF No. 41 at 3-5. Not so. The System concedes its financial interest is inferior, a critical distinction from its own cited authority. In *Randall v. Fifth Street Finance Corp.*, this Court appointed an institutional investor over an individual investor **where both claimed the largest loss**. *See* 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016). This Court declined to "untangle the web of competing accounting and valuation methods at issue" and assumed that the movants "each allege[d] losses that are approximately equal" before appointing the institution as Lead Plaintiff. *Id. Randall* is therefore inapposite here: there is no dispute over valuation methods and both movants agree that Mr. Kimfoko's loss is greater. The System's other cases addressing "minimal" differences in losses likewise involved contested financial interest disputes where competing movant claimed the largest financial interest, or are otherwise distinguishable.[3]

---

[2] Mr. Kimfoko and the System's *Lax* factors are taken from their respective filings. *See* ECF Nos. 26-4, 33-5.

[3] *See Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (declining to find difference in losses determinative and weighing *Lax* factors in a

Accordingly, where, as here, a movant concedes a smaller loss and advances no other basis to claim the largest financial interest, courts find the movant with the largest loss to be the presumptive Lead Plaintiff, including where the movant with the smaller loss is an institution. *See Francisco*, 2016 WL 3004664, at \*5 (rejecting argument that "the benefit of having an institutional investor . . . lead the Class should not be outweighed by such a minimal difference in losses," which the institution argued was about $6,000, and holding that "even if the difference in losses were considered *de minimis*" the institution would not be presumptive Lead Plaintiff because it "has itself conceded that 'the [individuals'] financial interest in the litigation is ... more than [its own].'"); *see also Hall*, 2009 WL 648626, at \*2, \*6 (appointing individual with $21,091 loss over institution with $20,690 loss and holding that "the plain language of the PSLRA does not permit the Court to favor [an institution] over another plaintiff with a greater financial stake merely because [movant] is an institutional investor," even when the difference "is only a few hundred dollars").

B.    **The System's Status As An Institutional Investor Does Not Override The PSLRA's Financial Interest Inquiry**

The System's argument, that its status as an institutional investor is determinative, is contradicted by "a straightforward application of the [PSLRA's] statutory scheme," which

---

contested financial interest dispute); *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at \*2 (S.D.N.Y. Jan. 30, 2009) (appointing institutional investor group as Lead Plaintiff where it claimed a larger loss than the competing individual movant group); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (citing *Juliar* for supposed institutional investor preference but is mere dicta since "[i]n the present case, every movant is an institutional investor."); *Nakamura v. BRF S.A.*, 2018 WL 3217412, at \*4 (S.D.N.Y. July 2, 2018) (appointing institutional investor as lead plaintiff because competing movant group failed to demonstrate it was "appropriate to aggregate the two separate holding companies."); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (appointing institutional investor after finding "multiple inaccuracies" in competing movant's damage calculations and "probable margin of error involved in the damage estimates" of another).

"provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).

Although the PSLRA's legislative history reflects a preference for institutional lead plaintiffs, that rests on the assumption that such investors typically suffer the largest losses. *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821 (N.D. Ohio 1999) (PSLRA's legislative history and academic material cited therein are "based on the theoretical assumption . . . that, generally speaking, the institutional investor will have suffered the greatest financial loss").

Congress did not create a presumption favoring institutional investors regardless of financial loss. *Id.* at 821-22 ("[t]he institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor[.]  If that were the case, Congress would have simply provided that *institutional investors* are presumptively the most adequate plaintiffs, regardless of the size of financial loss") (emphasis in original); *see also Cavanaugh*, 306 F.3d at 737 n.20 ("[i]f financial sophistication had been Congress's principal concern, it would not have made the plaintiff who *lost* the most money the presumptive lead plaintiff") (emphasis in original).

Accordingly, the System's institutional status does not make it the presumptive Lead Plaintiff where Mr. Kimfoko, who has the largest financial interest, has made more than a *prima facie* showing of adequacy and typicality.  "[A] preference for institutional investors is not proof of [individual's] inadequacy, which is what [the institution] must demonstrate to rebut the lead-plaintiff presumption." *Guzman*, 2025 WL 2694126, at \*10; *see also Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 571 (E.D. Tex. 2021) (holding that the PSLRA "does not foreclose appointment of a fully competent individual investor," and that doing otherwise "would violate the plain language of the statute, and work to undermine the presumption crafted by Congress").

**C.      The Presumption In Favor Of Mr. Kimfoko Has Not Been Rebutted**

In support of his Lead Plaintiff motion, Mr. Kimfoko submitted a sworn declaration detailing his background as an experienced investor and affirming his intent to actively oversee counsel, confer with counsel regarding litigation strategy, attend important court proceedings, hearings, depositions, and mediations, and review and authorize important filings. *See* ECF 33-1 ¶¶2–8; *see also Robison*, 2022 WL 17881476, at *9 (information about movant's occupation, residence, and investment experience "sufficient [] to convince the Court he satisfies the PSLRA's requirements").

There can be no dispute that Mr. Kimfoko has further demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class, a law firm that has recovered over $2 billion in securities related matters since 2014, including a case before this Court. *See Mr. Kimfoko's Opening Brief,* ECF 32 at 10-11; *Guzman*, 2025 WL 2694126, at *9 (adequacy "judged in part by whether the movant has chosen qualified counsel"); *see also Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at *10 (E.D.N.Y. Apr. 26, 2022) ("[i]n assessing a proposed lead plaintiff's selection and retention of counsel . . . courts give significant weight to counsel's experience").

BFA's partners have secured significant recoveries in some of the most prominent securities related cases in recent decades, including several in the past few years. *See* ECF Nos. 33-6, 42 at 9-10 (discussing, among others, BFA's $420 million resolution in *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.), BFA's record resolution valued at over $919 million in *The Police and Fire Retirement System of the City of Detroit v. Musk*, C.A. No. 2020-0477-KSJM (Del. Ch.), and BFA's $129 million resolution in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.)).

7

BFA also secured a $120 million recovery before this Court in *Freedman v. Weatherford International Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.).  In *Freedman*, BFA represented Court-appointed Co-Lead Plaintiff Anchorage Police and Fire Retirement System, and BFA partner Javier Bleichmar, the principal undersigned attorney here, was Anchorage's lead attorney there.  *See* ECF No. 33-6 at 14.

The System cites *Freedman* as support for its Lead Plaintiff appointment based on its institutional investor status.  *See* ECF No. 41 at 5-7.  But in *Freedman*, the Court declined to appoint an individual investor based on his failure to make a sufficient showing of adequacy for two reasons, neither of which applies here.  First, the individual failed to submit a declaration or otherwise provide information regarding his investment experience.  *See Freedman v. Weatherford Int'l Ltd.*, 2012 WL 13175995, at *1 (S.D.N.Y. July 10, 2012).  Second, and "much more important," was his choice of counsel: a "five-person law firm" with limited securities class action experience.  *Id.*

If anything, *Freedman* raises questions about the System's proposed Lead Counsel, Abraham, Fruchter & Twersky, LLP ("AF&T").  AF&T's Firm Resume lists nine attorneys affiliated with the firm (*see* ECF 26-5), yet its public websites inconsistently list six and eleven attorneys, respectively, in two separate active websites.  *See Attorneys*, AF&T, https://aftlaw.com/attorneys/ (last visited Jan. 5, 2026); *Attorneys*, AF&T, https://new.aftlaw.com/attorneys/ (last visited Jan. 5, 2026).  These discrepancies and the lack of attention to detail raise questions regarding the firm's size, staffing, and resources, and its capacity to serve as Lead Counsel in this litigation.

The System's remaining arguments against Mr. Kimfoko's adequacy are speculative aspersions that fall far short of the "proof" required to rebut the presumption.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The System raises questions about Mr. Kimfoko's foreign residence,

experience directing counsel, resources and availability, fluency in English, and a purported unusual trading pattern. ECF No. 41 at 7. Mr. Kimfoko's declaration submitted with his opening motion addresses these concerns. *See* ECF No. 33-1 ¶¶2-8 (Mr. Kimfoko attested that he is "able and willing to convene future calls, attend in-person meetings…. ensure responsible oversight of counsel," and that he "do[es] not foresee any problems communicating with counsel or staying abreast" of this litigation).

Courts routinely reject these arguments as timeworn and speculative. *See Guzman*, 2025 WL 2694126, at *9 (rejecting argument that individual investor "lack[ed] the sophistication" to serve as Lead Plaintiff and noting that "Congress did not choose to include experience managing securities or other complex litigation" in the PSLRA "[n]or is such experience expressly encapsulated in Rule 23"); *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *9 (S.D.N.Y. Sep. 16, 2011) (movant's "foreign citizenship is no bar to his motion for lead plaintiff"); *Marquez*, 2022 WL 1314812, at *9 ("no apparent experience with U.S. courts," "no experience serving in a representative capacity," and Hong Kong residency were no bar to Lead Plaintiff appointment, and noting that "courts routinely appoint foreign investors as lead plaintiffs").

The System also speculates that Mr. Kimfoko's purchases of MoonLake stock at set dollar amounts may indicate he invested pursuant to an automated or pre-set spending plan. ECF 41 at 7. This conjecture does not constitute proof. *See Feldman v. Alto Neuroscience, Inc.*, 2025 WL 3440686, at *2 (N.D. Cal. Dec. 1, 2025) (rejecting argument that trading strategy subjected movant to unique defenses and declining to "engage in this speculation" where "[i]nstead of providing proof," the competing movants "merely pose rhetorical questions"). And while it is unclear whether it would be even relevant if the trades were so executed, to take the issue off the table, Mr. Kimfoko is hereby submitting a supplemental declaration affirming that all of his MoonLake

investments were made manually and that he did not use an automated or scheduled investment plan at any point. *See* Declaration of Javier Bleichmar, Ex. A, submitted herewith.

**D.    The System's Request For Limited Discovery Should Be Rejected**

The PSLRA permits discovery of a lead plaintiff movant only upon a "reasonable basis" that the presumptive Lead Plaintiff is "incapable of adequately representing the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iv).    The System's counsel submits a declaration based on "google searches" that rather than raise questions only serves to confirm the information in Mr. Kimfoko's declaration. *See* Berger Decl. ECF No. 43 at 2-3 (acknowledging that Mr. Kimfoko resides in France, attended business school, and maintains a film production company).

Nothing in the declaration undermines Mr. Kimfoko's adequacy or raises an issue of fact, nor does the System argue as much.  Given that there are no factual issues in dispute, there is no basis, reasonable or otherwise, to allow discovery. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 348 (S.D.N.Y. 2009) (rejecting discovery request where it was "likely to provide results that are neither helpful nor likely to change the outcome").  The System has produced "not one iota of evidence to give the Court even a reasonable basis to authorize discovery." *See Ferrari v. Impath, Inc.*, 2004 WL 1637053, at *7 (S.D.N.Y. July 20, 2004).

**CONCLUSION**

For the reasons discussed above and in his opening and opposition briefs, Mr. Kimfoko respectfully requests that the Court:  (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the putative Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: January 5, 2026                                Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

10

_/s/ Javier Bleichmar_

Javier Bleichmar
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz
Evan A. Kubota
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com
ekubota@bfalaw.com

-and-

Adam C. McCall (*pro hac vice* forthcoming)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (212) 789-2303
Facsimile: (415) 445-4020
amccall@bfalaw.com

*Counsel for Proposed Lead Plaintiff Yoann Kimfoko, and Proposed Lead Counsel for the Putative Class*

11

**CERTIFICATION OF WORD-COUNT COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c).  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 3,132 according to the word-processing system used to prepare the document.

Dated: January 5, 2026                                 */s/ Javier Bleichmar*
                                                                          Javier Bleichmar